IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH APPLE ID SKRILLA2001@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC. | Case No. 1:26-mj-00009<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Kachine Jonese, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California 95014. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been since June 2021. I am currently assigned to the ATF Louisville Field Division, Charleston, West Virginia, Field Office.

3. I graduated from the Federal Law Enforcement Training Center, where I learned basic criminal investigation techniques. In addition, I graduated from the ATF National Academy, where I learned about federal firearms laws, federal explosives laws, bomb scene investigations, and arson investigations.

4. I have received investigative training in, conducted, and participated in investigations of violations of federal criminal laws, including those relating to firearms and controlled substances. These acts commonly involve the criminal use and transfer of firearms, illicit drug trafficking, acts of arson, and criminal possession or use of explosives and/or destructive devices.

5. In my current position as an ATF Special Agent assigned to the Charleston, West Virginia, Field Office, my primary responsibilities include investigating individuals or groups who have committed violations of the federal firearms and narcotics laws. Within that role, my job duties include, but are not limited to:

   a. Functioning as a case agent, which entails the supervision of specific investigations;

   b. Interviewing witnesses relative to the illegal trafficking of drugs and firearms and the distribution of monies and assets derived from these illegal acts;

   c. Functioning as a surveillance agent observing and recording movements of persons trafficking in drugs and firearms and those suspected of trafficking in drugs and firearms; and

   d. Drafting, obtaining, and executing search warrants.

6. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

7.       The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not contain all of the information that I or other law enforcement agents have learned during the course of this investigation.

8.       Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance) have been committed by CHRISTOPHER LEWIS ("LEWIS"). There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

9.       This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, this Court is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10.      On or about December 2, 2025, an investigator at the Southern Regional Jail and Correctional Facility, located in Beaver, Raleigh County, West Virginia, contacted Sgt. M.S. Horn with the Southern Regional Drug and Violent Crime Task Force ("SRDVCTF"), regarding a video call between Ronnie Myers WORTH ("WORTH") and inmates at the jail.  During the recorded video call, which was time-stamped 21:08 hours on December 1, 2025, WORTH showed the inmates various round containers that appeared to contain marijuana packaged for retail sale:



At one point during the call, an inmate asked WORTH, "what them dudes going for," and WORTH replied, "you know 50." Investigators understood WORTH and the inmate to be speaking about how much WORTH would charge for marijuana. WORTH also showed the inmates a large amount of U.S. currency:



LEWIS was present with WORTH while he showed the inmates the marijuana. LEWIS also spoke with the inmates during the call.

11. Sgt. Horn was familiar with WORTH and LEWIS and knew that WORTH lived at a residence on Coal Heritage Road in Bluefield, Mercer County, West Virginia. The residence

4

was listed as WORTH's address on his driver's license issued in September 2025. Sgt. Horn had also received information in August 2025 that LEWIS was residing there with WORTH while LEWIS was on parole. The residence where WORTH and LEWIS lived resembled the location where WORTH and LEWIS were during the recorded video call with the inmates.

12. A criminal history records check revealed that WORTH had multiple prior drug charges and a 2018 conviction for delivery of a controlled substance from Mercer County, West Virginia. LEWIS also had several prior drug charges and a 2023 conviction for possession with intent to deliver a controlled substance from Mercer County, West Virginia.

13. Based on the recorded video call between WORTH and the inmates at the jail, law enforcement obtained a state search warrant for WORTH's and LEWIS's residence on Coal Heritage Road. The search warrant was executed on December 10, 2025. During the execution of the search warrant, law enforcement found trash bags filled with the same round containers of marijuana packaged for retail sale that appeared to be the same as the ones WORTH showed the inmates on the recorded video call. Multiple such trash bags were found in a bedroom believed to belong to LEWIS, along with his driver's license and an amount of United States currency. Elsewhere in the residence, law enforcement found approximately $24,500 in U.S. currency, another trash bag full of containers of marijuana, and three firearms. WORTH and LEWIS were both inside the residence at the time the search warrant was executed and were subsequently arrested.

14. The search warrant for the residence also authorized law enforcement to search the contents of any cellular telephones found inside the residence. On December 23, 2025, I transported an Apple iPhone believed to belong to LEWIS to the Digital Forensics Unit at the Huntington Police Department. A complete forensic download of the phone was attempted but

unsuccessful; however, investigators were able to obtain a partial download of the phone's contents.

15. A review of the partial download revealed multiple photographs, all created in November 2025, depicting what appeared to be distribution quantities of marijuana:



| November 7, 2025 | November 11, 2025 | November 14, 2025 |

16. Investigators also found the following photograph, created on December 10, 2025, depicting what investigators believed to be marijuana packaged for retail sale:



Investigators believed the photograph's caption to be an attempt to advertise the suspected marijuana for sale. The containers in the photograph resembled those found in the residence during the execution of the search warrant.

17. The partial download of the phone also included device information, including the phone's model, serial number, and assigned telephone number. LEWIS was listed as the owner of the phone. The Apple ID associated with the phone was skrilla2001@gmail.com. The phone's contents were last backed up to iCloud on December 12, 2025. Based on my training and experience, I believe the information backed up to iCloud will yield a more accurate depiction of the phone's contents.

## **BACKGROUND CONCERNING APPLE**[1]

18. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

19. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

   a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

---

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Manage and use your Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "Introduction to iCloud," available at https://support.apple.com/kb/PH26502; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; and "Apple Platform Security," available at https://help.apple.com/pdf/security/en_US/apple-platform-security-guide.pdf.

b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

    e.  Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users. It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

    f.  Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

    g.  App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

20. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email

9

addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

21. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

22. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "capability query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the "Find My" service, including connection logs and requests to remotely find, lock, or erase a device, are also maintained by Apple.

23. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address

10

and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

24. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple. Records and data associated with third-party apps, including the instant messaging service WhatsApp, may also be stored on iCloud.

25. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

26. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

27. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crimes under investigation.

28. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account

may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

29.     Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

30.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

31.     Based on the foregoing, I request that the Court issue the proposed search warrant.

32.   Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Apple.  Because the warrant will be served on Apple, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Special Agent Kachine Jonese
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to telephonically pursuant to the procedures of Federal Rule of Criminal Procedure 4.1 on March __13__, 2026.



_____
Omar J. Aboulhosn
United States Magistrate Judge

14